HARRIS BEACH ⅟
ATTORNEYS AT LAW

July 1, 2016

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

SVETLANA K. IVY

DIRECT:   (585) 419-8779
FAX:      (585) 419-8811
SIVY@HARRISBEACH.COM

**VIA ECF**

Magistrate James L. Cott
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007-1312
cottnysdchambers@nysd.uscourts.gov

RE:   <u>SPV-LS, LLS v. Jacob Herbst</u>
      16-MC-197 (Part One)

Dear Magistrate Cott:

I write on behalf of Plaintiff SPV-LS, LLC ("SPV") and Third-Party Defendants Life
Trading Trust, T-LEG LLC, Financial Life Services, and SPV II, LLC (together with SPV, the
"Krasnerman Entities") in advance of the continued deposition of Jacob Herbst, scheduled to
occur before Your Honor at 2:00 p.m., at United States District Court, Southern District of New
York, United States Courthouse, 500 Pearl Street, New York, NY 10007-1312, on Thursday,
July 7, 2016.

The Krasnerman Entities' legal positions pertinent to the upcoming deposition are, for the
most part, set forth in the Motion to Compel filed on May 20, 2016 (Dkt. Nos. 1-3). However,
one of the issues not previously briefed by the parties, but which will potentially become relevant
at the deposition, is spousal privilege. In the event that Your Honor rejects Mr. Herbst's Fifth
Amendment assertions as improper, it is possible that either Mr. Herbst or Mr. Twersky, who
serves as counsel for Mr. Herbst's wife Malka Silberman, will attempt to assert spousal privilege
to prevent Mr. Herbst from testifying in response to certain questions. The Krasnerman Entities
do not believe that spousal privilege has any application to communications between Mr. Herbst
and his wife concerning the business affairs of the Trust or in any way concerning the Policy,
and we are providing the basis for our position in advance in hopes of facilitating resolution of
any argument about this issue on July 7.

Pursuant to Federal Rule of Evidence 501, state law governs privilege for purposes of
civil cases. Under New York Civil Practice Law and Rules § 4502, "A husband or wife shall not
be required, or, without consent of the other if living, allowed, to disclose a confidential
communication made by one to the other during marriage." The preliminary question is
therefore whether the communication was made because of the spousal relationship. *See Atlantic
Richfield Co. v. Triad Petroleum, Inc.*, 113 F.R.D. 686 (S.D.N.Y. 1987). Two exceptions to the
spousal privilege are (1) ordinary business communications (which are not deemed confidential),

Magistrate James L. Cott
July 1, 2016
Page 2

HARRIS BEACH ⅢⅢ
ATTORNEYS AT LAW

and (2) communications intended to facilitate or conceal criminal activity (the "crime-fraud" exception). Both exceptions apply here.

Under the seminal Court of Appeals decision of *Parkhurst v. Berdell*, 65 Sickels 386 (1888), "not all communications made between husband and wife when alone" are privileged. In that case, the Court of Appeals held that the spousal privilege did not attach to "ordinary conversations, relating to matters of business." Based upon this pivotal ruling, courts in New York have typically rejected claims of spousal privilege over communications between spouses relating to business matters. *See People v. Melski*, 10 N.Y.2d 78 (1961) ("(L)itigants have often sought to have a spouse's testimony as to transactions of the witness husband or wife excluded . . . . Such attempts have generally been unsuccessful.") (internal quotation marks omitted); *Roberts v. Pollack*, 92 A.D.2d 440 (1st Dep't 1983) ("ordinarily, defendant would be entitled to examine plaintiff about her husband's business and financial affairs"); *Securities Settlement Corp. v. Johnpoll*, 128 A.D.2d 429 (1st Dep't 1987) (affirming order denying a wife's motion to quash subpoenas "inasmuch as no marital privilege would attach to the ordinary business records sought here and testimony as to 'ordinary business matters' of a spouse").

Many of the questions asked, and to be asked, of Mr. Herbst at his deposition relate to his involvement with the N. Bergman Insurance Trust (the "Trust"), its business affairs generally, and its ownership of a life insurance policy issued by Transamerica Life Insurance Co. on the life of Nancy Bergman (the "Policy"). Mr. Herbst held himself out as the Trustee of the Trust, was an investor in the Trust, and engaged in dealing with respect to the Policy, which the Trust sold to the Krasnerman Entities. Mr. Herbst's wife, Malka Silberman, now claims that she was the Trustee since 2008, that she was unaware of her husband's and other investors' actions in selling the Policy in 2009 and thereafter in litigating the Trust's rights with respect to the Policy, and that the Trust should therefore not be bound by two federal court decisions finding that the Trust had no further rights in the Policy. Claiming that the prior federal court rulings are not binding on the Trust, Mr. Herbst's wife claims that the Trust retains a right to the $10 million in death benefit proceeds currently deposited in the United States District Court, South Dakota, Southern Division, pending resolution of an interpleader action. Thus, any communications between husband Herbst and wife Malka about the Trust and Policy are ordinary business communications, not confidential spousal communications.

Mr. Herbst's wife Malka recently filed an affidavit (enclosed herewith) in the District Court for the Eastern District of New York swearing under penalty of perjury that her husband was "one of [her] direct contacts with the investors" in the Trust (¶ 24). She alleges that she trusted the investors to ensure payment of premiums on the Policy and to inform her (purportedly as the true Trustee) of any plans to market or sell the Policy (¶¶ 8-14). Malka claims she occasionally inquired of the investors about the status of the Policy, and that the investors informed her that the Trust continued paying premiums on the Policy, failed to inform her that they had entered into agreements to sell the Policy to the Krasnerman Entities, and never informed her that they, on behalf of the Trust, engaged in (and lost) litigation concerning ownership of the Policy in two federal courts. According to Malka, she only recently learned that: "[her] husband, Jacob Herbst, one of the investors in the Trust, held himself out to be the

Magistrate James L. Cott
July 1, 2016
Page 3

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

Trustee in Bankruptcy Court and acting on behalf of the Trust in [the Eastern District of New York] in 2011 and 2012" (¶ 24). Malka's sworn statements, among other evidence, show that any communications between her and her husband concerning the Policy and the Trust were ordinary business communications, not confidential spousal communications. Therefore, no spousal privilege should apply to questions about such communications.

Additionally, the crime-fraud exception applies. *See In re Donald Sheldon & Co., Inc.,* 191 B.R. 39 (S.D.N.Y. 1996) (to invoke the crime-fraud exception, "there must be probable cause to believe that the particular communication was intended in some way to facilitate or conceal criminal activity," and finding the exception applicable where probable cause existed that spouses were hiding assets from the bankruptcy trustee); *People v. Watkins,* 63 A.D.2d 1033 (2d Dept. 1978) (conversations between a husband and wife regarding a joint gambling operation "were nothing more than exchanges between partners in crime discussing business matters of interest to the parties as criminals, not as spouses").

Probable cause exists that Mr. Herbst and his wife were engaged in a conspiracy to defraud the courts and to avoid being bound by two federal court rulings against the Trust. Even as Mr. Herbst, on behalf of the Trust, was pursuing a stay of any collection of the death benefit in the Bankruptcy Court preventing Transamerica from paying the proceedings to the Krasnerman Entities, his wife was simultaneously asserting her own claims on behalf of the Trust to Transamerica and threatening a double recovery in the event that Transamerica distributed the death benefit to SPV. Once it was clear that Transamerica would not release the proceeds due to the existence of a competing claim asserted by Malka on behalf of the Trust, Mr. Herbst without explanation ceased to prosecute the Trust's litigation in the Bankruptcy Court and withdrew its appeal. This circumstantial evidence, along with other evidence to be to be revealed at Mr. Herbst's continued deposition, provides probable cause that any communications between Mr. Herbst and his wife about the Trust and Policy were to facilitate and/or conceal their fraudulent and criminal activity in defrauding the federal courts.

Respectfully submitted,

HARRIS BEACH PLLC

Svetlana K. Ivy

Enclosure
cc:    Samuel Katz, Esq. *(via ECF)*
       Aaron Twersky, Esq. *(via email)*
       Douglas A. Foss, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

FINANCIAL LIFE SERVICES, LLC        Case No. 2:10-cv-04499

             Plaintiffs,

       - against -

N. BERGMAN INSURANCE TRUST,

             Defendant.
--------------------------------------------------------------------x

## DECLARATION OF MALKA SILBERMAN IN FURTHER SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT

**TWERSKY PLLC**
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
(212) 355-5009 (fax)

Of Counsel:

     Aaron Twersky, Esq.
     Ilana Neufeld, Esq.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

FINANCIAL LIFE SERVICES, LLC

                    Plaintiffs,             Case No. 2:10-cv-04499

        - against -               **DECLARATION OF**
                                            **MALKA SILBERMAN IN**

N. BERGMAN INSURANCE TRUST,       **FURTHER SUPPORT OF**
                                            **MOTION TO VACATE**

                  Defendant.       **<u>DEFAULT JUDGMENT</u>**

-------------------------------------------------------------------x

MALKA SILBERMAN, declares and affirms under penalties of perjury the following:

1.    I am the trustee of The N Bergman Insurance Trust (the "Trust")[1] and as such, I have personal knowledge of the facts contained herein and if called as a witness, I would and could competently testify to all such matters.

2.    I make this declaration in further support of the Trust's Motion to Vacate the Default Judgment entered against Defendant on September 28, 2011, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, on the grounds that

        a.    the judgment was void; and

        b.    for such other and further relief as this Court may deem just and proper.

3.    In truth, it is not necessary for me to really go into the background and details of how I came to be the successor trustee of the Policy, because for purposes of this lawsuit and the default judgment, I, as successor trustee of the Trust, was never served.

4.    Nor did I ever knowingly have any contact with Mark Nussbaum or any of the

---

[1]    As noted in the accompanying Memorandum of Law, the caption incorrectly refers to the Trust as "N. Bergman Insurance Trust" when the correct name of the Trust is actually "The N Bergman Insurance Trust."

imposters who purported to represent the Trust regarding the proceedings in this case or in the bankruptcy proceeding.

5.  Nevertheless, attached hereto as Exhibit A are true and correct copies of the Renunciation and Appointment of Successor Trustees and Amendment to The N Bergman Insurance Trust, which designated and appointed me as successor trustee of the Trust as of March 27, 2008.  I took over the position from Nachman Bergman on that date.

6.  This document proves conclusively that I am the current trustee of the Trust and have been since March 27, 2008.  Any litigation that was initiated after that date would have had to have been served upon me, as trustee of the Trust.

7.  I was never served with service in this case, and Plaintiff has never even alleged that I was personally served.  This fact alone should warrant the Court to grant this motion and unwind this action, because the default judgment was entered without the Court ever having obtained personal jurisdiction over the Trust, because of lack of service of process on the proper trustee.

8.  However, that being said, though it is truly unnecessary, I would like to explain how I became the successor trustee of the Trust and the events that transpired after my appointment.  I offer this information not out of necessity but more to provide context and background for the Court.

9.  Not long after the Policy went into effect, I was approached by a group of investors who inquired if I would become the successor trustee of the Trust.  I believe the investors asked me to take over the position for the trust in place of Nachman Bergman because

they considered me to be a trustworthy person who would be able to fairly administer the proceeds of the Policy once they were paid to the Trust.

10. I accepted the role of trustee and signed the document noted above. Upon information and belief, one of the investors called Transamerica to inform them of the change in trustee, but was told it was unnecessary to fill out any official paperwork as the beneficiary of the Policy was still the Trust.

11. Whenever I inquired of the investors about whether the premium payments were properly being paid, I was informed it was being taken care of accordingly. I was also told that if the investors ever decided to market and/or sell the Policy, that I would be part of the discussions and any decision making process. Of course, as trustee of the Trust, I would be the one who would have to make the final decision and would need to sign any necessary sale documents.

12. None of the investors ever approached me regarding marketing or selling the Policy, nor did anyone else. Let me repeat this: I was never involved in *any discussion, with anyone*, regarding selling the Policy.

13. It is my strong belief that no one associated with FLS ever approached Nachman Bergman regarding a potential sale either.

14. From 2008, when I became successor trustee of the Trust, until April 2014 when Nancy Bergman died, I relied upon what the investors told me, that they were making the proper premium payments on the Policy. They never asked me about selling the Policy to FLS, let alone inform me that they had attempted to sell it. I had no other communications or interactions with anyone else regarding the Trust or my trustee role.

15. In or about April 2014, after Nancy Bergman died, as part of my duties as trustee of the Trust, I wrote to Transamerica, expecting they would pay out the Policy to the Trust. However, it was then that I learned for the first time that FLS was also claiming they were entitled to the proceeds of the Policy.

16. In fact, over time I came to realize that what actually occurred was as follows: the investors reached out to Hillel Schreiber of Cambridge Life Settlements, LLC ("Cambridge") to sell or "settle" the Policy on the secondary life insurance policy market. FLS, a known purchaser of secondary life insurance policies, in turn, also reached out to Cambridge to purchase policies from within the secondary market, including this Policy. No one informed me, as Trustee, or Nachman, as the former trustee, that the Policy was being offered for sale to FLS. This sale was done without our consent or knowledge.

17. Subsequently, and because Cambridge wanted to hurry through the transaction to make its large commission, Cambridge, without my required consent, sold the Policy to FLS by forging Nachman Bergman's signature on the sale and purchase agreement. Again, no one informed me of the fact that the Policy now allegedly belonged to FLS.

18. Interesting to note, I have come to learn over time and strongly believe that FLS was offered to purchase several other insurance policies on the life of Nancy Bergman in or around the same time it was offered to purchase this Policy without my knowledge or consent.

19. I was completely shocked to learn that there were allegations that the Policy was sold, because I knew that I had never spoken to anyone about selling the Policy – not the

investors or anyone at Cambridge – nor did I ever sign documents transferring ownership of the Trust or the Policy. I strongly believe that the same is true of Nachman Bergman as well, and that any purported signatures of his must be forgeries. Further proof that Nachman Bergman's signatures relating to the sale of the Policy are forgeries can be deduced from his own assertions as follows:

a.  Nachman Bergman alleged in his affidavit, dated November 3, 2014, filed in support of setting aside a default judgment in the South Dakota Action that the documents evidencing the sale of the Policy to FLS were complete forgeries. *See* Exhibit B, Nachman Bergman Aff. dated November 3, 2014, ¶ 4.

b.  Similarly, Nachman Bergman's purported affidavit in support of the alleged sale of the Policy to FLS refers to Nancy Bergman as his mother, when she is his grandmother – a fact Nachman Bergman would never have gotten wrong and sworn to. *See* Exhibit B, Nachman Bergman Aff. dated November 3, 2014, ¶ 5; Exhibit C, Nachman Bergman Aff. dated December 3, 2009.

c.  Assignment of the policy by Nachman Bergman on behalf of the Trust to LTT in December 2009 when the Policy had already been sold to FLS two months earlier is a forgery. *See* Exhibit B, Nachman Bergman Aff. dated November 3, 2014, ¶ 5.

d.  The Physician's Letter of Competency, from Dr. Robert Goodman, purportedly supplied by Nachman Bergman in support of the alleged sale of the Policy to FLS is a forgery because Nachman Bergman was never a patient of or treated by Dr. Goodman. *See* Exhibit B, Nachman Bergman Aff. dated November 3, 2014,

¶ 7;  *see* Exhibit D, Physician's Letter of Competency.

    e.    Nachman Bergman declares in his affidavit that he never had any dealings with FLS or anyone else relating to the Policy.  *See* Exhibit B, Nachman Bergman Aff. dated November 3, 2014, ¶ 8.

20.    What these forged documents reveal to me, now that I was made aware of them in 2014, is that the sale occurred not only without my knowledge or authority, but that it also occurred without Nachman Bergman's authority.  In this way, he as predecessor trustee, and I as successor trustee were both mislead.

21.    I never sold the policy to FLS or provided the documents now relied upon by FLS as proof of the sale.  Nachman Bergman resigned as Trustee a year and half before these supposed transactions.  Moreover, at the time, Nachman Bergman was in his mid-20's and had no college degree or substantial experience in the life insurance business. He simply did not have the training or ability to generate the documents he supposedly provided.  Nor did he have access to the relevant information.  He resided in Maryland at that time.

22.    It was only after Nancy Bergman died, that I learned of this action against the Trust (in which though I am the trustee, I was never served in) and of the bankruptcy proceeding.

23.    Again, I did not know about, and certainly did not participate in, either of these actions.

24.    While I later learned that my husband, Jacob Herbst, one of the investors in the Trust, held himself out to be the Trustee in Bankruptcy Court and acting on behalf of the Trust in this Court in 2011 and 2012, he never informed me that he was holding himself out as Trustee or acting on behalf of the Trust.  In fact, as one of my direct contacts with the

investors, I asked on many occasions whether anything had changed relating to the status of the Trust and the Policy. The answer was always "no" and I was repeatedly told that I need not have any concerns about this.

25. It is my strong belief that Nachman Bergman was unaware of both of these cases as well. In any case, I was the trustee at the time of those actions and he was not.

26. Soon thereafter, I was interpled into and sued in the South Dakota case, and had to frantically scramble to find a lawyer who could represent me there. That took a lot of time and effort. Since then, I have just barely been able to keep up with that actively litigated case. I have also been sued in yet another action, this one also in the Eastern District of New York, which is nearly identical to the South Dakota case. I will be filing a motion to dismiss that action as well.

27. Since 2014, since learning of the default judgment entered in this action, I have wanted to make a motion to vacate it, however I was unable to do so until now for multiple reasons.

28. Firstly, the South Dakota case is a nonstop, extremely active case. My attorney tells me of new filings and motions almost every day, which require responses and oppositions, etc. My hands have been full with that case since the moment it began.

29. Secondly, it is only as time goes on that I am able to fully grasp all the facts of what happened between 2009 and 2014. I did not have all the information necessary to make this motion the moment I learned of the default and it took time to piece it all together. After gathering the facts and finding the time to make this motion amidst all that is going on South Dakota, I am making this motion.

## CONCLUSION

Accordingly, I respectfully request that this Court grant the relief requested in this motion and vacate the Default Judgment entered against the Defendant. I declare under penalty of perjury of the laws of the United States and the State of New York that the foregoing is true and correct.

                        MALKA SILBERMAN

Sworn or affirmed to before me
this 20 day of June, 2016

    06/20/2016
NOTARY PUBLIC

MIR M. KASHAM
NOTARY PUBLIC, State of New York
No. 01KA6259617
Qualified in Kings County
Commission Expires April 16, 2020

# EXHIBIT A

## RENUNCIATION AND APPOINTMENT OF SUCCESSOR TRUSTEES

WHEREAS, by indenture of Trust dated December 18, 2008, between NANCY BERGMAN as Grantor and NACHMAN BERGMAN as Trustee, the Grantor established THE N BERGMAN INSURANCE TRUST;

WHEREAS, NACHMAN BERGMAN is desirous of resigning as Trustee; and

WHEREAS, Article "XVI" provides in part that,

"A.    If all Trustees shall die, resign, become incapacitated, or refuse to act further as Trustee and the last-serving Trustee failed to appoint a successor, those persons who are the majority of the income Beneficiaries and who are over the age of eighteen (18) shall appoint one or more successor Trustee by written instrument delivered to the persons so appointed and to the primary Beneficiaries; provided, however, that at all times there shall be serving as a Trustee of the Trust at least one independent Trustee who is not an income or remainder Beneficiary of such Trust (the term "independent" shall have the meaning set forth in Section 674(c) of the Internal Revenue Code and Regulations promulgated thereunder, as they now exist or may from time to time be amended).

B.    The Trustees shall have the right to resign at any time by giving notice in writing to the Grantor. The expenses of a resigning Trustee's accounting shall be a proper charge against the Trust estate."

NOW, THEREFORE, upon written notice to the Grantor, a copy of which is annexed hereto, NACHMAN BERGMAN does hereby resign as Trustees of THE N BERGMAN INSURANCE TRUST U/A/D December 18, 2006, and does hereby designate and appoint MALKA SILBERMAN, currently residing at 4511 16th Avenue, Brooklyn, New York 11204, as Successor Trustee of same in his place and stead.

IN WITNESS WHEREOF the parties have executed this document as of the 27th day of _____, 2008.

_____
NACHMAN BERGMAN

Dated: _March 27, 2008_

-1-

STATE OF NEW YORK)
COUNTY OF            ) ss:

     On the 27th day of March, in the year 2008, before me, the undersigned, personally appeared, **NACHMAN BERGMAN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                              Notary Public

                        NELSON BLOOM
          Notary Public, State of New York
              No. 24-4967386
           Qualified in Kings County
        Commission Expires June 4, 20/0

-2-

## ACCEPTANCE BY TRUSTEE

The undersigned, **MALKA SILBERMAN**, currently residing at 4511 16th Avenue, Brooklyn, New York 11204, does hereby accept her appointment as Successor Trustee to **NACHMAN BERGMAN** of **THE N BERGMAN INSURANCE TRUST U/A/D** December 18, 2006, and does agree to serve as said Successor Trustee in accordance with the terms of said Trust Agreement, and without compensation.

**MALKA SILBERMAN**

Dated: 3/27/08

-1-

STATE OF NEW YORK)
COUNTY OF *Kings* ) ss:

On the 27th day of _____ *March* _____ in the year 2008, before me, the undersigned, personally appeared, **MALKA SILBERMAN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

-2-

## AMENDMENT TO

### THE N BERGMAN INSURANCE TRUST

WHEREAS, Grantor created **THE N BERGMAN INSURANCE TRUST** ("Trust") by an Agreement of Trust dated the 18th day of December, 2006, by and between **NANCY BERGMAN,** as Grantor, and **NACHMAN BERGMAN,** as Trustee; and

WHEREAS, **NACHMAN BERGMAN,** in a document dated *March 27*, 2008, resigned as Trustee of the Trust and appointed **MALKA SILBERMAN** as Successor Trustee in his place and stead; and

WHEREAS, **MALKA SILBERMAN,** in a document dated *March 27*, 2008, accepted her appointment as Trustee of the Trust; and

WHEREAS, pursuant to EPTL 7-1.9, Grantor may amend or revoke any of the terms and conditions of the Trust upon written consent of all persons beneficially interested therein; and

WHEREAS, the Grantor now desires to alter and amend **ARTICLE III** of the Trust, in it's entirety and replace it with **ARTICLE III** as stated below.

NOW, THEREFORE, in consideration of the premises and by virtue of the statutory power given to Grantor as aforesaid, Grantor hereby directs that **ARTICLE III** of the Trust, in it's entirety be modified and amended to read as follows:

1

## ARTICLE III

### DISPOSITIVE PROVISIONS

A.    The Grantor specifically directs that (i) the provisions of Estate, Powers and Trusts Law Section 11-2.4 shall not apply to this Trust, (ii) that no adjustments shall be made between principal and income and (iii) that the provisions of Estates, Powers and Trusts Law Section 11-2.3(5) shall be construed accordingly.

B.    During the lifetime of the Grantor, the Trustees may, at his or her sole and absolute discretion, make distributions to or for the benefit of the Beneficiaries in such amounts, even as to the whole of the Trust Estate, as the Trustee, in his or her sole and absolute discretion, sees fit, provide, however, that the Trustees are obligated to ensure that any such distributions to any or all of the beneficiaries shall be matched by distributions to the other beneficiaries in a ratio equivalent to and in such proportion as to be equivalent to the percentages of the Trust said beneficiaries would receive were the Trust property to be held and remain undistributed until the death of the Grantor as set forth in **ARTICLE III, Paragraph C** of this Trust. The above notwithstanding, no Trustee shall make any such discretionary distribution for any beneficiary said Trustee is under a legal obligation to support. Such discretionary distributions are to be made by an independent trustee.

C.    The above notwithstanding, in the event any insurance policy owned by this Trust is sold during the lifetime of the Grantor, the Trustees shall distribute the principal and undistributed income of this Trust, if any, as follows:

> 1.    Ten percent (10%) of a sum equal to the then principal and undistributed income of this Trust, less the amounts paid as premiums towards any insurance policies owned by this Trust, shall, at the Trustee's sole and

2

absolute discretion, be distributed to either the Grantor's issue, in equal shares, *per stirpes*, or to a charitable, not-for-profit organization, to be chosen by **NACHMAN BERGMAN**, provided, however, that said charitable, not-for-profit organization qualifies as being exempt from and contributions to which are deductible for the purposes of U.S. federal estate and income tax laws.; and

2.    The then remaining balance of said funds shall, at the Trustee's sole and absolute discretion, be distributed to either **MALKA SILBERMAN**, currently residing at 4511 16th Avenue, Brooklyn, New York 11204, or to a charitable, not-for-profit organization, to be chosen by **MALKA SILBERMAN**, provided, however, that said charitable, not-for-profit organization qualifies as being exempt from and contributions to which are deductible for the purposes of U.S. federal estate and income tax laws. In the event **MALKA SILBERMAN** is not then living, any distributions that would have been made to her may be made to his issue in equal shares, *per stirpes*; and hall be distributed to **MALKA SILBERMAN**, if then living and if not then to her issue in equal shares, *per stirpes*.

D.    Upon the death of the Grantor the Trustees shall distribute the principal and undistributed income of this Trust, if any, as follows:

1.    Five percent (5%) of said funds shall, at the Trustee's sole and absolute discretion, be distributed either the Grantor's issue, in equal shares, *per stirpes*, or to a charitable, not-for-profit organization, to be chosen by

3

NACHMAN BERGMAN, provided, however, that said charitable, not-for-profit organization qualifies as being exempt from and contributions to which are deductible for the purposes of U.S. federal estate and income tax laws.; and; and

2. The then remaining balance of said funds shall, at the Trustee's sole and absolute discretion, be distributed to either **MALKA SILBERMAN**, currently residing at 4511 16th Avenue, Brooklyn, New York 11204, or to a charitable, not-for-profit organization, to be chosen by **MALKA SILBERMAN**, provided, however, that said charitable, not-for-profit organization qualifies as being exempt from and contributions to which are deductible for the purposes of U.S. federal estate and income tax laws. In the event **MALKA SILBERMAN** is not then living, any distributions that would have been made to her may be made to his issue in equal shares, *per stirpes*; and hall be distributed to **MALKA SILBERMAN**, if then living and if not then to her issue in equal shares, *per stirpes*.

E. If any property held in this Trust is included in Grantor's gross estate by reason of Section 2035 of the Code, or the corresponding provision of any subsequent federal tax law, and if Grantor's spouse survives the Grantor and is married to the Grantor at the time of Grantor's death, the Trustee shall, upon Grantor's death, then hold the Trust Estate in a separate Trust (hereinafter referred to as the "Marital Trust"), to invest and reinvest the same and to pay the net income to Grantor's spouse at least quarter-annually during Grantor's spouse's life. In said event, the Trustee may at any time or from time to time pay to Grantor's spouse so much of the principal, whether the whole or the lesser amount, as the Trustee, in his or her absolute discretion, deems appropriate for

4

Grantor's spouse's comfort and general welfare. In exercising this discretionary power, the Trustee may, but need not, consider any other resources of Grantor's spouse and shall give primary consideration to Grantor's spouse's needs and desires.

Upon the death of Grantor's spouse, the Trustee shall, except to the extent Grantor's spouse's Will contains a different direction for the payment of death taxes which specifically refers to this Marital Trust, make available to the Executor of Grantor's spouse's estate, from property then belonging to the principal of the Marital Trust, such amount as said Executor shall determine to be equal to the excess of (i) all death taxes which shall become payable by reason of Grantor's spouse's death, over (ii) the death taxes that would have become payable by reason of Grantor's spouse's death if, in the computation thereof, there had not been included any part of the property belonging to the Marital Trust. The Trustee shall pay this amount, as needed to pay said death taxes, at such time or times as Grantor's spouse's Executor may request in writing. The determination of Grantor's spouse's Executor as to the amount payable under this Paragraph shall be conclusive upon all persons interested in the Marital Trust. Following Grantor's spouse's death, the Trustee shall distribute any undistributed income to the estate of Grantor's spouse and shall distribute the remaining principal balance of the Marital Trust pursuant to the provisions of **Paragraph C** of this

## ARTICLE III.

The Grantor understands and anticipates that the legal representatives of the Grantor's estate will elect under the provisions of the Code or a state death tax law applicable to Grantor's estate to qualify all or a portion of the Marital Trust created by this Article for the federal and state marital deduction.

F. If at the time of the Grantor's death any of the individual beneficiaries of this Trust are not living and did not leave any issue surviving, then, and in such event, the distributions to have been made to said deceased Beneficiary shall be distributed to those persons to whom and in

5

proportions in which said corpus and undistributed income would have been distributable if said deceased Beneficiary had then died the owner thereof, intestate and a resident of the State of New York.

The Trust, as so altered and amended, shall continue in full force and effect, subject to the conditions, limitations and powers therein contained.

IN WITNESS WHEREOF, the Grantor, Trustee and Beneficiaries have executed this instrument the day of _____ march _____, 2008.

_____
NANCY BERGMAN, Grantor

_____
MALKA SILBERMAN, Trustee

_____
NACHMAN BERGMAN, Beneficiary

6

STATE OF NEW YORK)
COUNTY OF            ) ss:

On the 27ᵗʰ day of ___march___, 200_8_, before me, the undersigned, personally appeared, **NANCY BERGMAN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

STATE OF NEW YORK)
COUNTY OF            ) ss:

On the 27ᵗʰ day of ___march___, 200_8_, before me, the undersigned, personally appeared, **MALKA SILBERMAN**, as Trustee of **THE N BERGMAN INSURANCE TRUST**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

STATE OF NEW YORK)
COUNTY OF            ) ss:

On the 27ᵗʰ day of ___march___, 200_8_, before me, the undersigned, personally appeared, **NACHMAN BERGMAN**, as Beneficiary of **THE N BERGMAN INSURANCE TRUST**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

7

## CONSENT PURSUANT TO EPTL 7-1.9

I, the undersigned, being of full age and competent to act, and being the Grantor of **THE N**

**BERGMAN INSURANCE TRUST** U/A/D December 18, 2006 (the "Trust"), do hereby consent

to the amendment to the Trust replacing **ARTICLE III** of the Trust, in it's entirety, with a new

**ARTICLE III**, and that the Trust shall continue in full force and effect as amended and modified.

_____
**NANCY BERGMAN, Grantor**

**STATE OF NEW YORK)**
**COUNTY OF** _Kings_ **) ss:**

On the 27th day of _march_, 200_8_, before me, the undersigned, personally appeared, **NANCY BERGMAN**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

8

## CONSENT PURSUANT TO EPTL 7-1.9

I, the undersigned, being of full age and competent to act, and being a Trustee under **THE N BERGMAN INSURANCE TRUST** U/A/D December 18, 2006 (the "Trust"), do hereby consent to the amendment to the Trust replacing **ARTICLE III** of the Trust, in it's entirety, with a new **ARTICLE III**, and that the Trust shall continue in full force and effect as amended and modified.

**MALKA SILBERMAN**, Trustee

**STATE OF NEW YORK)**
**COUNTY OF** _Kings_ ) ss:

On the 27th day of _March_, 200_, before me, the undersigned, personally appeared, **MALKA SILBERMAN**, as Trustee of **THE N BERGMAN INSURANCE TRUST**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967385
Qualified in Kings County
Commission Expires June 4, 2010

9

## CONSENT PURSUANT TO EPTL 7-1.9

I, the undersigned, being of full age and competent to act, and being a Beneficiary of THE N BERGMAN INSURANCE TRUST U/A/D December 18, 2006 (the "Trust"), do hereby consent to the amendment to the Trust replacing ARTICLE III of the Trust, in it's entirety, with a new ARTICLE III, and that the Trust shall continue in full force and effect as amended and modified.

NACHMAN BERGMAN, Beneficiary

STATE OF NEW YORK)
COUNTY OF _Kings_ ) ss:

On the _27_ day of _March_, 200_8_, before me, the undersigned, personally appeared, NACHMAN BERGMAN, as Beneficiary of THE N BERGMAN INSURANCE TRUST, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

NELSON BLOOM
Notary Public, State of New York
No. 24-4967386
Qualified in Kings County
Commission Expires June 4, 2010

10

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| SPV-LS, LLC<br><br>    Plaintiff,<br><br>vs.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY.<br><br>    Defendants. | Civ. No. 14-4092 |
| TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>    Third Party Plaintiff,<br><br>vs.<br><br>NACHMAN BERGMAN as TRUSTEE OF THE N BERGMAN INSURANCE TRUST dated December 18, 2006, MALKA SILBERMAN, as Successor Trustee of THE N BERGMAN INSURANCE TRUST dated December 18, 2006, LIFE TRADING TRUST dated August 8, 2007, T-LEG LLC (a/k/a TLEG LLC), FINANCIAL LIFE SERVICES LLC, SPV II LLC, and THE REPRESENTATIVE OF THE ESTATE OF NANCY BERGMAN.<br><br>    Third Party Defendants. | **AFFIDAVIT OF NACHMAN BERGMAN** |

Nachman Bergman, being first duly affirmed upon his oath, hereby states and alleges as follows:

1.     I am Third Party Defendant, Nachman Bergman as Trustee of The N Bergman Insurance Trust dated December 18, 2006 (the "Trust"), and submit this affidavit in support of the motion of myself and Third Party Defendant, Malka Silberman, as Successor Trustee of The N Bergman Insurance Trust dated December 18, 2006 (collectively, the "trustees"), to Set Aside Entry of Default and in Opposition to Plaintiff SPV-LS LLC's Motion for a Default Judgment.

2.     This case concerns a dispute over the ownership of a $10 million insurance policy on the life of my grandmother, Nancy Bergman (the "Policy").[1] I understand that among the parties claiming ownership are trustees of the Trust, the original owner of the policy, and a number of entities controlled by a number of entities controlled by Michael Krasnerman such as third party defendant Financial Life Services LLC ("FLS"), who claim to have purchased the policy from the Trust.

3.     It is undisputed that, when the policy was initially issued, the Trust was designated as owner.[2] I never sold the policy to FLS. The numerous documents relied upon by SPV to establish ownership are forgeries, with very few exceptions.[3]

4.     I have examined the exhibits to the Michael Krasnerman Affidavit dated August 7, 2014 and the purported signatures of myself, my wife Rhonda Bergman and Nancy Bergman on Exhibits 5 through 9, 11 through 19, 24, 25 and 32 are forgeries (including Exhibit 5, Life Insurance Policy Purchase and Sales Agreement). I and the above two individuals never met or appeared before the alleged notaries Jerome E. Goldman and Elchonen Kass (whose purported notarizations appear on these documents) either to notarize their signatures or as witnesses. Nor

---

[1] The N Bergman Life Insurance Trust is a traditional (and non-statutory) express trust.

[2] Under the trust agreement, it is the trustees who hold legal title to the trust property. Accordingly, any references in this submission to the Trust being owner do not imply that it is the relevant entity which has the capacity to sue and be sued.

[3] The trustees intend to move shortly to vacate the judgment and other proceedings including the auction sale in the Eastern District of New York.

were we in Kings County, Brooklyn, New York, the supposed place of notarization, on the dates set forth, October 30, December 3 and/or 23, 2009.

5.        Certain of the exhibits contain unmistakably obvious errors, such as a purported affidavit of mine referring to Nancy Bergman as my mother not grandmother, and blatantly incorrect representations, including as to the source of the funds used to purchase the policy (Exhibit 9) and the absence of liens on the policy (Exhibit 17). A number of the documents make no sense, including a purported assignment of the policy by me on behalf of the Trust to LTT in December 2009 when the policy supposedly had already been sold to FLS two months earlier (Exhibit 32).

6.        Only three of the exhibits contain genuine copies of my signature (Exhibits 2 through 4, including the Trust Agreement of The N Bergman Insurance Trust dated December 18, 2006).

7.        Contrary to the contents of these exhibits, I never was the patient of or treated by Robert Goodman who claims to be my attending physician, attesting to my physical and mental wellbeing in Exhibit 10 (Physician's Letter of Competency). I never even visited his office and never heard of his name until recently. The genuine signature of Dr. Evan Mintz, one of the treating doctors of Nancy Bergman, on Exhibit 20, contrasts markedly with his purported signature on Exhibit 21, an affidavit allegedly notarized by Jerome Goldman, on [October 30, 2009].[4]

8.        I resigned as trustee on March 27, 2008 and was replaced by Ms. Silberman at that time. See annexed documents.[5] FLS never had any dealings with me regarding a sale of the policy

---

[4] While Exhibit 26 is a copy of Nancy Bergman's Social Security Card and ID, it was not provided by Nancy Bergman.

[5] None of the references in this submission to "trustees" imply that they were trustees at any times other than those set forth in the text.

during 2009 and 2010[6] and the documents which it obtained through some other method and SPV relies upon are forgeries.

9.       In his affidavit, Michael Krasnerman, the principal of FLS, vaguely states that he was contacted to purchase the policy in the latter portion of 2009 (¶9). He does not state who contacted him. Krasnerman's claim that he dealt with me regarding a sale of the policy and was supplied documents by me (¶¶10, 12 and 14) is untrue. Krasnerman admits that when an issue arose with the policy he contacted not me but Hillel Schreiber, supposedly the broker representing the seller (¶¶17-18).

10.       Schreiber was and/or is a principal of Cambridge Life Settlements, LLC, a New York based Life Settlement Brokerage involved in the secondary marketing of Life Insurance Policies, according to publicly available information on the website http://www.zoominfo.com.

11.       No one met, communicated with or engaged Cambridge Life Settlements (or any one of its principals, employees, agents, officers and partners, including Schreiber) regarding the marketing of the policy, on behalf of the Trust (including the insured, beneficiaries, the trustees, and the Trust's actual broker David Kohn).[7] Likewise, no one on behalf of the Trust, engaged or dealt with a person known as Bentzion Miller, whose purported affidavit submitted by SPV (Exhibit 23) claims that he was the insurance agent. The only insurance broker on the policy was David Kohn.

12.       I never sold the policy to FLS or provided the documents now relied upon by FLS. I resigned as trustee a year and half before these supposed transactions. At the time, I was in my mid-20's and had no college degree or employment experience in the life insurance business. I

---

[6] A person identifying himself as Krasnerman did call me after the supposed sale in an attempt to pay me money to sign documents.
[7] It was Kohn who initially persuaded me to become involved in obtaining several life insurance policies for my grandmother.

simply did not have the training or ability to generate the documents I supposedly provided. Nor did I have access to the relevant information. I resided in Maryland at that time.

13.     FLS claims to have obtained its default judgment against the Trust in the Eastern District of New York through substituted service upon the "co-occupant" of my residence, but, I was not the trustee at the time and there was no co-occupant of my residence.

14.     Specifically, FLS claims to have served Chaim Lemder at 3100 Bancroft Road, Baltimore, MD as co-occupant of my residence, on or about October 21, 2010 and November 3, 2010 (EDNY Doc. 2 and 3).

15.     Chaim Lemder is and was not the "co-occupant" of my residence (whatever that vague term means). I never received a copy of the summons and complaint in that matter. Nor was I authorized to accept service of process.

16.     To my knowledge, no past or present trustee (neither myself nor Malky Silberman) participated in the proceedings in the Eastern District or authorized any of the papers submitted by attorney Mark J. Nussbaum. Rather, it is my understanding that investors including Motti Aksler, retained Mr. Nussbaum to represent the trust entity named in the case. While Mr. Nussbaum represented to the Court that I was his client, in fact he had no contact with me.[8]

17.     It is possible that I received a piece of correspondence about the case addressed to the trust or other entity several months later than the alleged service,[9] at which point the docket shows a default had already been entered against a trust entity. I was not a trustee at the time. Accordingly, I would have provided the correspondence to Mr. Aksler, an investor involved with the Trust, or others involved in raising funds to pay premiums.

---

[8] Investors became involved with the Trust when they raised funds to pay the premiums. Those who advanced monies to pay premiums became creditors of the Trust. I understand that total premiums paid by the Trust approached $1 million as of March 2008.
[9] I do not recall receiving any correspondence about the case addressed to me personally.

18.     The investors never advised me of the proceedings in the Eastern District lawsuit including the default. To the contrary, they constantly reassured me that my family would receive the payment to which they are entitled. But after Nancy Bergman died and still no payment was made, I learned what happened in this case.

19.     The trustees frustrating search for counsel began in June, shortly after the complaint was filed and even before we were named as third party defendants or served. I have been advised that numerous counsel in Sioux Falls (at least four) refused to take the case, one even after being paid a $15,000 retainer, through no fault of the trustees.

20.     I acknowledged service in August. I have been advised that, in mid-September, counsel who had received a $15,000 retainer declined to take the case. The trustees immediately filed a *pro se* answer, as we having no practical way of realizing that a trust must be represented by counsel.

21.     The trustees made serious and substantial efforts, in complete good faith, backed by appropriate financial payments, to retain counsel and meet our deadline for filing an answer. The delay has been short.

22.     Both trustees are non-attorneys. Neither of us has any connection to South Dakota. Accordingly, we sought the assistance of the Legal Bureau of the Council for Community Preservation in Brooklyn, New York (Isidore Neuman, Executive Director) and were advised that a New York attorney, Stuart Davis, would locate a South Dakota lawyer. The trustees provided more than $15,000 for this purpose; a $15,000 retainer was wired to a South Dakota firm, as stated above.[10]

---

[10] Through our attorney, the trustees have requested a complete list of the attorneys contacted by Stuart Davis, but have not received it.

23.     I am advised that Stuart Davis contacted at least three attorneys in June. None were hired.
Todd C. Miller and Eric D. DeNure of May & Johnson P.C., declined to take the case. Mr. Davis
also discussed the case with a third attorney, Daniel Fritz, Linquist & Vennum, LLP, but he was
not hired.

24.     In late July, the trustees signed acknowledgements of service providing for an answer by
August 28, 2014. We were told Davis had obtained an extension of the August 28, 2014 deadline
from plaintiff's counsel until September 15, 2014.

25.     On or about August 21, 2014, we provided a cashier's check payable to another attorney
for $15,000.[11] In September, we were requested to return the check and wire the funds to Alan
Peterson, at Lynn Jackson Shultz & Lebrun, P.C., which we did.

26.     On September 15, 2014, Mr. Peterson – despite receiving the requested $15,000 retainer
– declined to represent the trustees. Having no practical way of realizing that a trust must be
represented by an attorney, we filed a *pro se* answer the same day. Shortly thereafter, in light of
our failure to retain an attorney through Mr. Davis, we sought the assistance of another New
York attorney, Andrew Citron. Mr. Citron arranged for the retention of Johnson, Heidepriem &
Abdallah on or about September 25, 2014, some ten days after Mr. Peterson declined to represent
us.

27.     Given the trustees' substantial efforts to retain counsel, including the provision of a
$15,000 retainer, and our failure to do so for reasons beyond our control, I believe our conduct
cannot be described as carelessly risking a default.  The trustees did not intentionally flout or
disregard procedure. We have every desire to diligently defend this case on the merits and
respectfully request the Court to allow us to do so.   To my knowledge, there is no evidence that

---

[11] Upon information and belief, unbeknownst to the trustees, the attorney was a New York attorney not admitted in
South Dakota.

has been lost or destroyed since August 2014 and certainly the trustees have not engaged in fraud or collusion.

28.    WHEREFORE, I respectfully request that this Court grant the trustees' Motion to Set Aside the Entry of Default and deny the plaintiff's motion for a default judgment.

Dated this 3rd day of November, 2014.

NACHMAN BERGMAN

STATE OF MARYLAND,

COUNTY OF (or City of Baltimore), to wit:

I hereby certify that on the 24th 3RD day of October, November, 2014, before me, the subscriber, a notary public of the State of Maryland, in and for BALTIMORE COUNTY [here insert name of county or City of Baltimore for which notary is appointed], personally appeared Nachman Bergman and made affirmation in due form of law that the matters and facts set forth in the above affidavit are true.

As witness, my hand and notarial seal.

NORMAN ROSENZWEIG
[Name of notary public typewritten or printed]

[Notary Seal] Notary Public

My Commission expires 4/20/2015



My comm. exp. April 20, 2015

# EXHIBIT C

# AFFIDAVIT

State of New York )
County of Kings) ss:

NACHMAN BERGMAN, being duly sworn, deposes and says:

1. I am the Trustee of The N. Bergman Insurance Trust ("Trust"), wherein my mother Nancy is the Grantor, and make this affidavit at the request of the All Financial Group in connection with the sale of a certain life insurance policy insuring my mother's life.

2. That the funds deposited in the account of the Trust used to pay premiums, namely the sum of $1,300,000.00, were drawn from family funds and used for such purpose.

_____
NACHMAN BERGMAN

Sworn to before me this
3 day of December, 2009

ELCHONON KASS
Notary Public, State of New York
Qualified in Kings County
Reg. No. 01KA5036527
Commission Expires Nov. 29, 20

Case 1:15-cv-00197-SMJ-JLQ ECF No. 14 filed 07/01/16 PageID Page #: 1364

# EXHIBIT D

## Physician's Letter of Competency

Physician's Name:

Physician's Address:

Phone Number:

Fax Number:

To whom it may concern,

I am the attending physician for:

Name:   Nachman Bergman
DOB:   11/18/80
SS#: 125 - 70 - 6152

I have determined that:

1.  The patient is under no constraint or undue influence
2.  The patient is of sound mind.

Sincerely,

_____              11/5/09
   Physician's Signature                    Date

**PHYSICIAN'S STAMP**

ROBERT GOODMAN, M.D.
1523 45th Street
Brooklyn, NY 11219